## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LESLIE GERMONY,

        Plaintiff,

v.                            Case No:  8:16-cv-153-T-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Leslie Germony seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge (ALJ) properly evaluated Plaintiff's fibromyalgia; (2) whether the ALJ properly evaluated the credibility of Plaintiff's statements in assessing her Residual Functional Capacity ("RFC"); and (3) whether the ALJ properly assessed the state agency medical consultant's opinion.

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## II.    Procedural History and Summary of the ALJ's Decision

On June 15, 2012, Plaintiff filed an application for a period of DIB alleging that she became disabled and unable to work on June 9, 2009.    Tr. 153.    Plaintiff alleged disability due to arthritis in her neck and back, tendonitis in her right arm and knee, depression/anxiety, panic attacks, a bone spur in her right foot (surgery), periodontics, three dead toes, breathing abnormalities, stress, and fatigue.    Tr. 166. The application initially was denied on August 30, 2012 and upon reconsideration on November 9, 2012.    Tr. 99, 107.    Plaintiff requested and received a hearing before ALJ James P. Alderisio on February 14, 2014, during which she was represented by an attorney.    Tr. 36-73.    Plaintiff and a vocational expert ("VE"), Scott E. Brown, testified at the hearing.    *Id.*

On March 27, 2014, the ALJ issued a decision finding Plaintiff not disabled from June 9, 2009 through the date of the decision.    Tr. 21-30.    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 9, 2009.    Tr. 23.    At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity; disorders of the spine; bilateral knee pain; and three dead toes of the left foot.    *Id.*    At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."    Tr. 25-26.    The ALJ then determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) [2] subject to certain

---

[2] The regulation defines light work as work that involves:

limitations: "no climbing of ladders, ropes, scaffolding, ramps or stairs; jobs must be on flat level ground with no foot pedals; [and] there must be a sit/stand option every hour."   Tr. 26.   Next, the ALJ found that Plaintiff was unable to perform her past relevant work as a driver or courier for outside delivery because this work required the use of foot pedals.   Tr. 28.   Considering Plaintiff's age, education, work experience, and RFC, however, the ALJ concluded that there are a significant number of jobs in the national economy Plaintiff can perform.   Tr. 29.   As a result, the ALJ found that Plaintiff is not disabled.   Tr. 30.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on November 19, 2015.   Tr. 1-3.   Accordingly, the March 27, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on January 21, 2016.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Doc. 15.

---

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.    42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).    The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.    *See* 20 C.F.R. § 416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Atha*, 616 F. App'x at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial

evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r,* 606 F.

App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### A.   *Whether the ALJ properly evaluated Plaintiff's fibromyalgia*

The ALJ considered Plaintiff's fibromyalgia and concluded that it is neither a medically determinable impairment nor a severe impairment.   Tr. 23-24.   The ALJ acknowledged that Plaintiff's primary care provider diagnosed Plaintiff with fibromyalgia.   Tr. 23.   The ALJ, however, determined:

> SSR 12-2p indicates that adjudicators cannot rely on the mere diagnosis alone.   The Ruling outlines the exact criteria for a diagnosis of fibromyalgia, as outlined in the criteria adopted by the American College of Rheumatology.   Unfortunately, treatment notes with merely a few references to "positive" or "diffuse" tender points, do not come close to this criteria (Exhibits 15F; 22F).   Moreover, while [Plaintiff] alleges fibromyalgia since 2010, the evidence does not reveal this diagnosis until October 2012, a mere two months before [Plaintiff's] date last insured (Exhibits 9F; 15F).   Accordingly, fibromyalgia is also non-severe.

Tr. 24.

#### a.  Fibromyalgia as a medically determinable impairment

The Social Security Regulations explain what is needed for a claimant to show an impairment:

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508.   The impairment must be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.   20 C.F.R. § 404.1527.

A claimant's fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."   *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (citing SSR 12-2p, 2012 WL 3017612 (July 25, 2012)).   Even if the record supports a diagnosis of fibromyalgia, "the mere diagnosis does not establish functional limitations." *Santin v. Comm'r of Soc. Sec.*, No. 5:15-cv-392-Oc-18PRL, 2016 WL 5478017, at *2 (M.D. Fla. Aug. 12, 2016) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)), *adopted by* 2016 WL 5477094 (M.D. Fla. Sept. 27, 2016). Instead, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of fibromyalgia" because the symptoms of fibromyalgia "can wax and wane so that a person may have 'bad days and good days.'"   *Laurey*, 632 F. App'x at 987-88 (citing SSR 12-2p, 2012 WL 3017612 (July 25, 2012)).

SSR 12-2p provides more detailed guidelines on point.   SSR 12-2p, 2012 WL 3017612 (July 25, 2012).   SSR 12-2p states that the SSA "will find a person has a [medically determinable impairment] of [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence described in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."   *Id.*   The section in dispute here is section II.B because

Plaintiff concedes that she does not meet the criteria under section II.A.   Doc. 18 at 6.

Pursuant to section II.B., a claimant must exhibit all three of the following: (1) a history of widespread pain in all quadrants of the body and axial skeletal pain that has persisted for at least three months; (2) "[r]epeated manifestations or six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and (3) evidence that other disorders that could cause these manifestations were excluded.   SSR 12-2p, 2012 WL 3017612 (July 25, 2012).   The SSA notes, "[o]ther physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia.]"   *Id.*   As a result, "it is common [] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs."   *Id.*   The examples of laboratory testing include complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor.   *Id.*

Plaintiff asserts that the ALJ improperly evaluated Plaintiff's fibromyalgia in determining whether Plaintiff's fibromyalgia is a medically determinable impairment.   Doc. 18 at 8-9.   Plaintiff alleges that her fibromyalgia satisfies the criteria under section II.B. of SSR 12-2p because she has six or more fibromyalgia symptoms, signs, or co-occurring conditions such as depression, anxiety, shortness of breath, fatigue or tiredness, difficulty falling asleep, tinnitus, blurred vision,

headaches, and urinary stress incontinence. *Id.* at 6-9. The Commissioner responds that the ALJ evaluated Plaintiff's fibromyalgia under both criteria, and Plaintiff did not show that she meets section II.B. Doc. 19 at 7-10. The Commissioner argues that even if the ALJ erred, Plaintiff does not show that the ALJ's error was harmful. *Id.* at 10-11. The Court finds that Plaintiff does not satisfy the criteria under section II.B. because Plaintiff does not have *repeated* manifestations of certain fibromyalgia symptoms, and Plaintiff's evidence does not exclude other disorders that could cause certain fibromyalgia symptoms. *Santin*, 2016 WL 5478017, at *3; SSR 12-2p, 2012 WL 3017612 (July 25, 2012).

On October 24, 2012, Rodney S. Daniel, M.D., examined Plaintiff due to her fibromyalgia, fatigue, and neck pain. Tr. 320-23. Dr. Daniel discussed that her fibromyalgia's associated symptoms include joint pain, multiple chemical sensitivity and widespread muscle pain, but did not note shortness of breath, headaches, or fatigue. Tr. 321. On the other hand, he indicated that Plaintiff did not exhibit symptoms of depression, one of symptoms pertinent to fibromyalgia. *Id.* Dr. Daniel maintained the same diagnosis throughout Plaintiff's visits on November 26, 2012, January 7, 2013, March 7, 2013, July 15, 2013, and November 15, 2013. Tr. 387, 390, 393, 396, 399. During the first visit on October 24, 2012, Dr. Daniel also opined that Plaintiff's fatigue may have been caused by Plaintiff's thyroid mass. Tr. 322-23. He further noted that although Plaintiff wakes up with headaches due to her fatigue, she does not exercise. Tr. 321.

On July 15, 2013, Dr. Daniel evaluated Plaintiff for her fibromyalgia and neck pain and opined that Plaintiff needs to lose weight because her weight is increasing. Tr. 392.  Furthermore, on November 15, 2013, Dr. Daniel diagnosed Plaintiff with insomnia and obesity in addition to fibromyalgia and noted that Plaintiff began to see a psychiatrist because of her husband's and son's verbal abuse.  Tr. 387.  In addition, Dr. Daniel stressed Plaintiff's need to exercise to treat her obesity.  Tr. 388. As shown above, Dr. Daniel's treatment notes do not exclude the evidence that other disorders such as insomnia, obesity, and thyroid mass caused some of the same symptoms as fibromyalgia.

Furthermore, Plaintiff's medical records indicate that smoking is the cause of Plaintiff's shortness of breath.  On November 14, 2012, Jesus Penabad, M.D., who examined Plaintiff, did not diagnose her with fibromyalgia, but instead with dyspnea of unclear etiology.  Tr. 363.  Dr. Penabad ordered a pulmonary function test due to Plaintiff's shortness of breath.  Tr. 363, 405.  Plaintiff's pulmonary test revealed that Plaintiff had a mildly decreased lung capacity of 72%, mildly decreased residual volume of 54%, and significantly decreased functional residual capacity of 45%.  Tr. 405.  The result also showed that Plaintiff had a restricted ventilatory impairment of a mild degree.  *Id.*  On March 27, 2013, Stanley S. Moles, M.D., opined that Plaintiff's shortness of breath and decreased lung capacity are from smoking.  Tr. 407.

Similarly, on June 13, 2012, Rajesh Patel, M.D., who examined Plaintiff for shortness of breath, discussed Plaintiff's family history of cardiac issues and that

Plaintiff has a premature history of coronary disease as a smoker.   Tr. 272.   Dr. Patel also noted that Plaintiff has smoked for twenty-six years.   *Id.*   On June 27, 2012, during Plaintiff's follow-up visit, Dr. Patel told Plaintiff to stop smoking because her shortness of breath is likely due to her history of COPD.[3]   Tr. 274. Likewise, on November 7, 2012, Plaintiff admitted to Nydia Conrad, Psy.D., to smoking one pack of cigarettes per day.   Tr. 299.   Plaintiff's medical records from April 24, 2009 further indicate that Plaintiff smokes twenty cigarettes a day.   Tr. 351.

Plaintiff's medical records also show that Plaintiff has been diagnosed with psychological disorders separate and apart from her fibromyalgia.   On November 7, 2012, Dr. Conrad psychologically evaluated Plaintiff at the request of the Division of Disability Determinations.   Tr. 298.   Although Plaintiff reported to Dr. Conrad that she had fibromyalgia, based on her examination and interview of Plaintiff Dr. Conrad diagnosed Plaintiff with adjustment disorder with anxiety and depression.   Tr. 300. During this visit, Dr. Conrad also noted that Plaintiff's reported psychological symptoms are depression and panic attacks, explaining that Plaintiff lost her parents within one year in 2011, feels like a burden to her family, and is stressed about her brother's arrest.   Tr. 298.   Plaintiff reported that those symptoms were present even before she lost her parents because she was taking care of her parents.   Tr. 298-

---

[3] COPD stands for Chronic Obstructive Pulmonary Disease.   COPD Foundation, http://www.copdfoundation.org/What-is-COPD/Understanding-COPD/What-is-COPD.aspx (last visited Mar. 8, 2017).

99.   Furthermore, Dr. Conrad noted that Plaintiff has a family history of depression. Tr. 299.

Moreover, on March 27, 2013, Dr. Moles diagnosed Plaintiff with involutional melancholy, acute and chronic anxiety with panic attacks, hypertension, and urinary stress incontinence, again separate and apart from Plaintiff's fibromyalgia.   Tr. 408. Furthermore, on August 20, 2013, Plaintiff sought psychological counseling with Amanda Sciarrotta, M.A.   Tr. 423-432.   During this visit, Plaintiff did not attribute her psychological issues to fibromyalgia, but reported that her depressive episodes began six years ago after she lost her job.   Tr. 423.   Plaintiff noted that her stress of not working, the death of her parents, and her daily physical pain increased her depressive symptoms, which included difficulty sleeping and panic attacks.   Tr. 423-24.   Based on her evaluation, Ms. Sciarrotta opined that Plaintiff has recurrent, moderate major depressive disorder, anxiety disorder—not otherwise specified, and cannabis abuse as well as fibromyalgia.   Tr. 430.   The above records suggest that Plaintiff's psychological disorders, not fibromyalgia, are the cause of Plaintiff's depression, anxiety, and insomnia.

Plaintiff also argues that her urinary stress incontinence is a fibromyalgia symptom.   Doc. 18 at 7.   The records, however, show that Plaintiff had a vaginal hysterectomy and bladder sling on September 6, 2011 and December 7, 2011 to treat her stress incontinence and menorrhagia.   Tr. 244-50, 259-60.   The records do not exclude menorrhagia as the cause of Plaintiff's stress incontinence.   Furthermore, although Plaintiff attributes stress incontinence, tinnitus, and blurred vision to

fibromyalgia (Doc. 18 at 7-8), Plaintiff complained of these symptoms only once to Dr. Moles on March 27, 2013 after having a vaginal hysterectomy and bladder sling in 2011.   Tr. 407-08.   In contrast, on April 24, 2009 and May 2, 2013, Plaintiff denied having blurred vision.   Tr. 352, 375.   As a result, Plaintiff's medical records do not establish that Plaintiff has the *repeated* manifestations of stress incontinence, tinnitus, and blurred vision.

Based on the above analysis, the Court finds that Plaintiff's diagnosis of fibromyalgia does not satisfy the criteria under section II.B. of SSR 12-2p.   Hence, to the extent that the ALJ erred in discussing Plaintiff's fibromyalgia, the ALJ's error was harmless because it would not have affected the ALJ's ultimate decision. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) ("To the extent that an [ALJ] commits an error, the error is harmless is if it did not affect the judge's ultimate determination.").

b.  The severity of Plaintiff's fibromyalgia

Plaintiff claims that the ALJ erred by concluding that Plaintiff's fibromyalgia was not severe for at least twelve consecutive months.   Doc. 18 at 9-11.   Plaintiff's argument, however, assumes that her fibromyalgia is a medically determinable impairment.   *Id.* at 9.   Plaintiff also concedes that the ALJ need not consider fibromyalgia in assessing Plaintiff's RFC if he determines that fibromyalgia is not a medically determinable impairment.   *Id.*

As Plaintiff concedes, this argument is now moot because Plaintiff's fibromyalgia does not satisfy the criteria stated in SSR 12-2p and is not a medically determinable impairment.   SSR 12-2p, 2012 WL 3017612 (July 25, 2012); *Santin*, 2016 WL 5478017, at *3.   Before the reaching the issue of severity, the ALJ first determines whether a claimant's alleged impairment is a medically determinable impairment.   *Lopez v. Comm'r of Soc. Sec.*, No. 8:14-cv-600-T-PDB, 2015 WL 12844407, at *5 (M.D. Fla. Sept. 25, 2015).   Because the ALJ properly found that Plaintiff's fibromyalgia is not a medically determinable impairment, the ALJ need not determine the severity of Plaintiff's fibromyalgia.   *Id.*; *see also Parish v. Colvin*, No. 5:15cv47-CAS, 2015 WL 5190719, at *13-16 (N.D. Fla. Sept. 3, 2015); *Simpson v. Colvin*, 2:14-cv-00946-AKK, 2015 WL 139329, at *5 (N.D. Ala. Jan. 12, 2015).   As a result, if the ALJ erred in finding Plaintiff's fibromyalgia non-severe, the error was harmless.   *Hunter*, 609 F. App'x at 558 ("To the extent that an [ALJ] commits an error, the error is harmless is if it did not affect the judge's ultimate determination.").

c.   The ALJ's assessment of Plaintiff's symptoms and credibility

Plaintiff argues that the ALJ must reassess Plaintiff's RFC and the credibility of Plaintiff's subjective testimony because he erred in finding that Plaintiff's fibromyalgia is not a medically determinable impairment.   Doc. 18 at 11-13.   This argument also is moot because as noted, the ALJ properly found that Plaintiff's fibromyalgia is not a medically determinable impairment.

B.   *Whether the ALJ erred in evaluating Plaintiff's symptoms and credibility*

In evaluating Plaintiff's RFC, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely credible.   Tr. 27.   He explained in part:

> The undersigned has no doubt that [Plaintiff] experiences some pain and limitations due to her numb toes and pain in her neck, back and knees. However, nothing in the record suggests that these conditions limit her beyond the above-referenced [RFC].   This conclusion is supported by a 2012 examination of [Plaintiff,] which revealed normal reflexes, full muscle strength in all extremities, intact fine manipulation, no evidence of any motor deficits, a normal gait without an assistive device, good heel and toe standing, a negative straight leg raise, no reproducible fatigue with repetitive muscle testing and the ability to get on and off the table and put her shoes on and off without assistance[.]   Moreover, as noted above, [Plaintiff] is able to handle tasks such as shower, dress, eat, drive, shop prepare simple meals, perform light household chores, feed the dog, watch television, talk on the phone and care for her young children, including dressing them, preparing their lunches and driving them to school.

*Id.*   Furthermore, the ALJ found that although Plaintiff and her husband are credible regarding Plaintiff's alleged symptoms of her severe impairments, their allegations of pain and limitations are disproportionate to the medical findings and Plaintiff's functional limitations.   Tr. 28.

Here, Plaintiff does not assert that the ALJ relied on the wrong legal standards or improperly analyzed Plaintiff's medical records.   Doc. 18 at 15-17.   Instead, Plaintiff argues that the ALJ erred by relying on Plaintiff's and her husband's acknowledgement of certain daily activities to discredit their allegations of pain and limitations.   *Id.*   Plaintiff also asserts that the ALJ should have considered her work history in assessing her credibility.   *Id.* at 17.   The Commissioner responds

that Plaintiff's medical records do not support Plaintiff's allegations of symptoms. Doc. 19 at 15-16.   Furthermore, the Commissioner argues that her work history does not bolster her credibility, and the ALJ is not required to consider her past work history in assessing her subjective symptoms.   *Id.* at 17-18.

Contrary to Plaintiff's argument, the ALJ did not rely on her daily activities alone but on both her medical records and daily activities in assessing Plaintiff's credibility.   Tr. 28.   Furthermore, as the Commissioner points out, the ALJ is not required to consider Plaintiff's work history in assessing her credibility.   When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ."   *Moore*, 405 F.3d at 1212 (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements

with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Here, the Court finds that the ALJ properly considered appropriate factors under the correct legal standards.   Based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence.   Tr. 26-28.   Properly discussing the standard, Plaintiff's testimony and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.   However, [Plaintiff]s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 27.   After discussing Plaintiff's treatment history, opinion evidence and her daily activities (Tr. 27-28), the ALJ determined that the record does not support the claimant's allegations to the extent that Plaintiff has a RFC less than what the ALJ opined.   Tr. 27.

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.   Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."   *Wilson*, 284 F.3d at 1225 (internal citations omitted).   "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r of Soc. Sec.*,

421 F. App'x 935, 939 (11th Cir. 2011).   "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court."   *Foote*, 67 F.3d at 1562.   The Court declines to do so here because the ALJ clearly articulated the reasons for his credibility findings.   Tr. 27-28.

C.   *Whether the ALJ erred in assessing the state agency physician's opinion*

On October 8, 2012, the state agency physician, Edmund Molis, M.D., assessed Plaintiff's impairments.   Tr. 90-94.   Although Dr. Molis found that one or more of Plaintiff's medically determinable impairments reasonably are expected to produce Plaintiff's pain or other symptoms, Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of the symptoms are not substantiated by the objective medical evidence alone.   Tr. 90.   He also determined that Plaintiff's statements regarding symptoms considering the total medical and non-medical evidence in file are only partially credible.   *Id.*

Furthermore, Dr. Molis opined that Plaintiff has exertional limitations of lifting and/or carrying occasionally 20 pounds and frequently 10 pounds, standing and/or walking and sitting for a total of about 6 hours in an 8-hour workday, and pushing and/pulling unlimitedly.   Tr. 91.   Dr. Molis also determined that Plaintiff has postural limitations of climbing ramps/stairs unlimitedly, climbing ladders, ropes and scaffolds frequently, balancing unlimitedly, and stooping, kneeling, crouching, and crawling frequently.   Tr. 92.   Otherwise, Dr. Molis found that Plaintiff has no manipulative, visual, communicative, or environmental limitations.   *Id.*   Based on

his evaluation, Dr. Molis opined that Plaintiff's impairments do not limit her to unskilled work, and Plaintiff has a RFC to perform light work.   Tr. 93.

In assessing Plaintiff's RFC, the ALJ accorded great weight to Dr. Molis' opinion because Dr. Molis provided a detailed basis for his conclusions that are consistent with the record as whole, and no opinions in the record contradict Dr. Molis' conclusions.   Tr. 28.   Plaintiff argues that the ALJ should have accorded little weight to Dr. Molis' opinion because Dr. Molis did not examine Plaintiff.   Doc. 18 at 18.   Plaintiff also argues that contrary to the ALJ's explanation, Dr. Molis did not discuss certain medical opinions to support his conclusions.   *Id.*   Furthermore, Plaintiff argues that when the ALJ accorded great weight to Dr. Molis' opinion, the ALJ did not explicitly state what medical records support Dr. Molis' opinion.   *Id.* at 19.   The Commissioner responds that certain medical opinions in the record are dated after Dr. Molis' opinion.   Doc. 19 at 19.   In addition, the Commissioner argues that the ALJ considered the medical evidence discussed by Plaintiff and still decided that the record is consistent with Dr. Molis' opinion.   *Id.*

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given

to the opinions of state agency medical consultants as the ALJ must do for other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).   When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).

In the Eleventh Circuit, the law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)) (per curiam).   The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." 631 F.3d at 1179 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.* (citations omitted).

The court has no rigid requirement, however, "that the [ALJ] specifically refer to every piece of evidence in his or her decision, so long as the decision is not a broad rejection that leaves the district court [] with insufficient information to conclude

whether the [ALJ] considered the claimant's medical condition as a whole." *Hunter*, 609 F. App'x at 557 (internal quotation marks omitted).

First, Plaintiff argues that in rendering his opinion, Dr. Molis did not refer to certain medical opinions including Drs. Daniel's and Moles' medical records. Doc. 18 at 18. The Commissioner correctly argues that Dr. Molis could not have considered some of the medical records Plaintiff discusses because these records are dated after Dr. Molis' opinion. Doc. 19 at 19. Dr. Daniel began treating Plaintiff on October 24, 2012, two weeks after Dr. Molis' opinion. Tr. 320. Dr. Moles' treatment notes also are dated after Dr. Molis' opinion because Dr. Moles treated Plaintiff in 2013. Tr. 407-14. Likewise, the earliest date of Alan J. Graves, M.D.'s medical records is November 1, 2012, which is after Dr. Molis rendered his opinion. Tr. 296-97, 313-14, 415-17, 419.

But the ALJ considered these medical records and other evidence on the record and found that the record as a whole is consistent with Dr. Molis' opinion. Tr. 28. The ALJ also discussed Plaintiff's magnetic resonance image of her cervical spine (Tr. 27); Dr. Daniel's treatment notes in evaluating Plaintiff's fibromyalgia and RFC (Tr. 24, 27); Dr. Grave's medical records (Tr. 27); and Plaintiff's history of thyroid tumor (Tr. 24). *See Lacina*, 606 F. App'x at 525 (holding that it is the function of the ALJ's, not the court's, to weigh and assess conflicting medical evidence).

To the extent that the ALJ did not note specific medical records related to Plaintiff's thyroid tumor, the ALJ is not required to refer to every specific medical evidence. *Hunter*, 609 F. App'x at 557. Furthermore, the record reveals that the

ALJ correctly found that Plaintiff did not allege any specific limitations regarding her thyroid tumor, and Plaintiff's thyroid tumor does not limit Plaintiff in any way.   Tr. 24.   On March 1, 2013, Plaintiff underwent right thyroid lobectomy for having an enlarging right thyroid mass.   Tr. 334, 369.   One day after Plaintiff's thyroid lobectomy, Rick Schmidt, M.D., explicitly noted that Plaintiff "will be on a regular diet and [] has no activity restrictions other than no showering until tomorrow."   Tr. 334.   Plaintiff was discharged after being recommended to follow up with her endocrinologist.   *Id.*   When Plaintiff followed up with Michele Laine, ARNP, on May 2, 2013, Plaintiff denied having any problems with swallowing, severe cough, or choking sensation, and was not on medication at that time.   Tr. 374.   Plaintiff's physical examination during this visit was normal.   *Id.*   On July 10, 2013, Plaintiff followed up with Dr. Penabad whose physical examination of Plaintiff was normal. Tr. 381-82.   Plaintiff even reported to Dr. Penabad that she felt well and had no complaints.   Tr. 381.   As a result, these medical records would not have affected the weight accorded to Dr. Molis' opinion because as the ALJ properly found, the records do not contradict Dr. Molis' opinion.   Tr. 28.   Based on the above analysis, the Court finds that substantial evidence supports the ALJ's accordance of great weight to Dr. Molis' opinion.   Tr. 28.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

      2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

      **DONE** and **ORDERED** in Fort Myers, Florida on this 16th day of March, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record